UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 09-65459-fra7 |
| PHILIP R. KROUSE, ) | |
| ) | |
| Debtor. ) | |
| IN RE ) | Bankruptcy Case |
| ) | No. 09-65465-fra7 |
| KROUSE RANCH, INC., ) | |
| ) | MEMORANDUM[1] OPINION |
| Debtor. ) | |

The Trustees in the two cases captioned above seek an order approving a global settlement which will provide for the sale of Philip Krouse's interest in Krouse Ranch, Inc., the resolution of claims by and between the estates and various parties, and dismissal of the Krouse Ranch, Inc. case. After careful consideration of this complex proposal, the Court concludes that it should be approved.

// // //

// // //

// // //

// // //

// // //

---

[1] This memorandum is not intended for publication.

Page 1 - MEMORANDUM OPINION

# I. BACKGROUND

A. *History*

Krouse Ranch, Inc., is the owner of property along the Applegate River in southwestern Oregon. Seventy-four percent of the shares in Krouse Ranch, Inc. ("KRI") was, prior to the initiation of these bankruptcy cases, owned by Philip Krouse.[2]

B. *Procedural History*

Both cases were commenced on October 8, 2009, with petitions for relief under Chapter 12 of the Code. On March 19, 2010, both cases were converted from Chapter 12 to Chapter 11 on the Debtor's motion. An order providing for the joint administration of the cases was entered on June 14, 2010.

A plan of reorganization was filed in Krouse Ranch, Inc. (which had been designated the lead case) on July 6, 2010. On November 24, 2010, the United States Trustee filed a motion to convert or dismiss the cases. A hearing to consider the motion was convened on February 18, 2011. At that time, the Debtors conceded that the cases should be converted to Chapter 7, and an order to that effect was entered on March 3, 2011.

Given the potential for conflicting claims between the estates, the United States Trustee elected to appoint different trustees in the two cases. As a practical matter, the joint administration of the two cases ended at that point.

According to the Court's claims register, the total amount claimed against the estate of Krouse Ranch, Inc., is $1,273,843.02, of which $474,780.49 is claimed as secured, and $17,758.50 is claimed as priority. Any objections to claims have been overruled or withdrawn, and there are no objections outstanding. All scheduled claims are deemed allowed. 11 U.S.C. § 502(a).

// // //

---

[2] The ownership of the balance of the stock is unclear. One percent of the shares is held by Copeland Sand and Gravel. The balance was held by Mr. Krouse's late brother. The parties assume that the shares are now owned by the brother's widow. However, no evidence of any probate proceeding or other transfer of the shares has surfaced in the bankruptcy proceedings.

Total claims filed in the Philip Krouse case are $1,437,332.73, of which $562,812.32 is claimed as secured, and $14,370.00 is claimed as priority. Nearly all of Philip Krouse's non-exempt assets at the time the petition was filed consisted of his shares in Krouse Ranch, Inc. An order discharging Philip Krouse was entered on June 20, 2011. No action to except any claim from discharge is pending.

Significant claims in the Krouse Ranch, Inc., case are:

<u>Claim No. 1</u>: Filed by Robert Kerivan in the sum of $228,713.70, based on a judgment entered by the Circuit Court for Josephine County, Oregon.

<u>Claim No. 2-3</u>: An amended claim filed by Robert Kerivan in the sum of $124,501.40, based on a judgment for attorney's fees.

<u>Claim No. 4-2</u>: Filed by Frohnmayer, Deatherage, Jamieson, Attorneys at Law, in the sum of $92,959.89. The claim is for legal services rendered to the Debtor. The claim is secured by a deed of trust delivered by Krouse Ranch, Inc., shortly before the commencement of the case. Delivery of the deed of trust has been challenged by creditors Kerivan and Bridgeview Vineyards as a fraudulent or preferential transfer.

<u>Claim No. 5-1</u>: Filed by Bridgeview Vineyards, Inc., in the sum of $1,000.00, secured by a judicial lien.

<u>Claim No. 6-1</u>: A claim alleging a "continuing course of waste with respect to the vineyard" on the real property owned by KRI. The claim is "estimated $100,000 plus," and is made in favor of Robert Kerivan.

<u>Claim No. 12-1</u>: This claim, made by Robert Kerivan, is in the sum of $641,689.12, and is premised on alleged on-going waste respecting the Applegate property for the year 2009, through the termination of the partnership previously existing between Kerivan and KRI. The claim is also made in the Philip Krouse case. The claiim appears to be in addition to the claim for waste set out as Claim No. 6.

<u>Claim No. 13-2</u>: An amended claim by Debtors' attorneys in the sum of $13,846.00. This is filed as a priority claim.

<u>Claim No. 14-1</u>: A priority claim of $3,587.50 claimed by Edward Talmadge, Attorney at Law, counsel for the Debtor-in-Possession.

<u>Claim No. 15-1</u>: A secured claim filed by Copeland Sand and Gravel, Inc., in the sum of $55,675.00.

## II. PROPOSED SETTLEMENT

The two Chapter 7 Trustees were presented with a difficult situation. The only asset of KRI is the real property in the Applegate Valley, and tenant rights such as grazing and water rights. The only substantial asset in Philip Krouse's case was his 74% ownership in KRI. Both cases involved substantial unresolved claims and related litigation. Compounding the difficulties of the KRI Trustee was the Debtor's low basis in the subject property for tax purposes. As will be seen, this would have resulted in a significant tax claim upon sale of the real property itself.

The parties now propose a transfer of Philip Krouse's controlling interest in KRI – and thus control of the real estate – to creditors Kerivan and Bridgeview. In return, Kerivan will contribute $100,000, plus additional cash sufficient to pay the claims outstanding in the KRI case, other than those of Kerivan and Bridgeview. The agreement provides for dismissal of the case after payment of the claims, effectively waiving the claims of Kerivan and Bridgeview.[3] At the time the KRI case is dismissed, the parties will undertake to dismiss litigation now pending in the bankruptcy and circuit courts. The Philip Krouse individual case will remain open, and Bridgeview and Kerivan will remain creditors. The only remaining asset at that point will be, presumably, the $100,000 paid in consideration for the transfer of the shares.

## III. DISCUSSION

Courts reviewing the fairness of a proposed compromise generally accord deference to the Trustee's business judgment in deciding whether to settle a matter. *In re Mickey Thompson Entertainment Group,* 292 B.R. 415, 420 (9th Cir. BAP 2003); *See In re Churchfield*, 277 B.R 769, 773 (Bankr. E.D. Cal. 2002) ("While the opinion of the Trustee is entitled to great weight, the bankruptcy court has a duty to make an informed, independent judgment as to the reasonableness of the proposed compromise"). "In deciding whether to approve a proposed compromise, a bankruptcy court should not substitute its judgment for that of the trustee as the settling party." *In re Golden Empire Air Rescue, Inc.*, 2006 WL 2784737, p.1 (Bankr. E.D.

---

[3] The settlement contemplates allowing time for due diligence and inspection of the property, and a transfer of rights adjunct to the real property, such as its water rights and grazing rights held by KRI. The settlement also requires that Philip Krouse leave – or be evicted from – the subject property.

Page 4 - MEMORANDUM OPINION

Cal. 2006) (citing *In re 110 Beaver St. P'ship.*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000)). "In sum, the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion." *Id*.

The proposed settlement provides for payment or waiver of all claims in the KRI case, plus funds to provide for the payment of administrative expenses in the Philip Krouse case. The combined value of the cash paid by the acquiring creditor and the allowed claims waived by that creditor exceed $1,300,000.

At the eve of the hearing to consider the proposed settlement, a third party advised the Court of a proposed cash purchase of the real estate from the KRI Trustee, for $1,400,000. The Debtor points to this offer as evidence that the proposed settlement is inadequate. The Debtor urges that the KRI Trustee either accept the proposal, or continue marketing the property in hopes of receiving a better one.

At an earlier proceeding, the Court received testimony from the estate's accountant, who testified that a cash sale of the real property by the corporation would result in a capital gains tax of roughly $300,000. It follows that the net value of the $1.4 million sale is $1.1 million, which is considerably less than the economic value received by the estates from the proposed settlement.

The proposal of the Trustees, while characterized as a "compromise," is not so much a compromise of contested claims as a liquidation of estate assets in a manner to maximize return to creditors by avoiding the capital gains tax resulting from a direct sale. The combined approach of the two Trustees maximizes the value of the assets under their control for the benefit of creditors, and should be approved.

At the hearing, the Debtor argued that the property should be sold for cash, and that he should have the opportunity to contest Kerivan's waste claims. However, the Debtor has made no effort to object to or otherwise challenge the claims, and has presented no evidence to the Court that the challenges would succeed. Nor has any challenge been made by either Trustee, from which this Court infers that the Trustees do not believe the challenges would result in any benefit to either estate.

// // //

// // //

Page 5 - MEMORANDUM OPINION

IV. CONCLUSION

The Court finds that the proposed distribution of the assets of both estates should be approved. An order to that effect will be entered contemporaneously with this memorandum.

*[signature]*

FRANK R. ALLEY, III
Chief Bankruptcy Judge